**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1577
_____

MONICA NICULCEA,
　　　　　　　　　　　　Appellant

v.

STONE RIDGE TOWNE CENTER,
(Retirement Living) New Dawn Christian Community Services

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:17-cv-02096)
District Judge:　Honorable Christopher C. Conner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 17, 2022

Before: JORDAN, GREENAWAY, JR., and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: December 7, 2022)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se Appellant Monica Niculcea appeals from the District Court's judgment in this employment discrimination action. For the reasons set forth below, we will affirm.

I.

Niculcea began working at Stone Ridge Towne Center ("Stone Ridge"), a retirement community, in 2003, and she was promoted to the title of Registered Nurse ("RN") Supervisor and hired to work as a Charge Nurse approximately two years later. In March 2013, while working a shift, Niculcea slipped and injured her hamstring and right sciatic nerve. As a result of her injury, in the months that followed, Niculcea took periods of leave and worked on sedentary or light duty, according to the recommendations of her medical providers. Niculcea was terminated from Stone Ridge in April 2014 after she was accused of resident abuse.

Niculcea filed suit against Stone Ridge in 2017; in her second amended complaint, she raised claims under the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., related to her employment and eventual termination. Stone Ridge filed a motion to dismiss, which the District Court granted in part, dismissing Niculcea's claims under the ADEA and GINA with prejudice. After discovery, both parties moved for summary judgment on the remaining claims. Over Niculcea's objections, the District Court entered an order adopting, with one modification, the Report and Recommendation of a Magistrate Judge,

2

granting Stone Ridge's motion for summary judgment, and denying Niculcea's. Niculcea filed a timely notice of appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over decisions granting motions to dismiss and motions for summary judgment. See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). In reviewing dismissal under Rule 12(b)(6), we must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. See Fleisher, 679 F.3d at 120. Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, "there is 'no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citation omitted). "[U]nless there is sufficient evidence for a jury to reasonably find for the nonmovant," summary judgment should be granted. Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011).

## III.

We agree with the District Court's disposition of Niculcea's claims. First, the District Court properly dismissed Niculcea's claims under the ADEA and GINA. The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee based on age, see 29 U.S.C. § 623(a), while the GINA prohibits the same with respect to genetic information, see 42 U.S.C. § 2000ff-1(a)(1). In support of her

3

ADEA claim, Niculcea asserted that the Stone Ridge employee who provided statements against her about the incident of resident abuse of which she was accused was younger than her. She otherwise made conclusory allegations that she was terminated because of her age. These allegations failed to state a plausible claim under the ADEA. See Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (describing elements of prima facie case of age discrimination). Likewise, Niculcea's allegations that Stone Ridge violated the GINA were insufficient to survive dismissal, as Niculcea failed to plead facts demonstrating that she had undergone genetic testing or that Stone Ridge took adverse action against her based on her genetic information. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (observing that we may "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements").[1]

Stone Ridge was also entitled to summary judgment on Niculcea's claims that survived dismissal.[2] Niculcea first challenges the District Court's disposition of her claims that Stone Ridge denied her reasonable accommodations for the disability arising out of her March 2013 work-related injury by refusing to provide her with a reserved

---

[1] Although Niculcea makes some factual allegations in support of her GINA claim in her opening brief, we will not consider them for the first time on appeal. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 n.12 (3d Cir. 2013).

[2] Contrary to Niculcea's assertions on appeal, we see no indication that the District Court applied the incorrect legal standard for deciding a motion for summary judgment or otherwise placed too high a burden on Niculcea at the summary judgment phase.

parking spot and scooter, failing to provide a team member to assist her with lifting more than 10 pounds, and refusing to allow her to leave work early to seek medical attention immediately following her injury.[3]  The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodations would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999) (reasoning that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith" (citation and internal quotation marks omitted)).

Niculcea did not provide sufficient evidence for a jury to find that Stone Ridge failed to reasonably accommodate her disability.  The record demonstrates that Stone Ridge allowed Niculcea to utilize any of the visitor's spots located near the facility's entrance when she asked to park closer to the building and granted her request to use a scooter, albeit at her own cost.  While Niculcea contends that Stone Ridge should have paid for a scooter, Stone Ridge also offered a wheelchair, and the ADA allows employers to choose an easier or less expensive accommodation.  See 29 C.F.R. Pt. 1630, App.

---

[3] Niculcea also alleged that Stone Ridge failed to accommodate her request to attend water pool therapy, but she has forfeited this claim on appeal by failing to raise it in her opening brief.  See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020).

5

§ 1630.9; see also Hankins v. The Gap, Inc., 84 F.3d 797, 800-01 (6th Cir. 1996) ("[A]n employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided."). And during periods in which Niculcea was not on leave due to her injury, Stone Ridge offered her light and sedentary duty work, in which she could use a wheelchair and obtain help from a team member to lift more than 10 pounds. Niculcea suggests that Stone Ridge should have assigned a team member to assist with her lifting limitations, but she failed to provide evidence that she raised this issue with Stone Ridge or that this accommodation was possible. Cf. Capps v. Mondelez Global, LLC, 847 F.3d 144, 157 (3d Cir. 2017) (noting that a plaintiff bringing a failure-to-accommodate claim must show that she "requested an accommodation" and "could have been reasonably accommodated").[4] Further, even assuming Niculcea showed that her injury was a disability and that Stone Ridge refused to accommodate her request to obtain immediate medical assistance for her injury, we agree with the District Court that Stone Ridge demonstrated that such accommodation would have constituted an undue burden. Specifically, Stone Ridge represented that it is required under state law to maintain an RN Supervisor on duty, and no one else was available to cover Niculcea's role at the time. Niculcea has not meaningfully contested this explanation either before the District Court or on appeal.

---

[4] We note, further, that "redundant staffing is not a reasonable accommodation." Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000).

Next, Niculcea challenges the District Court's disposition of her claims that she was terminated because of her disability and Romanian national origin. Even if Niculcea made a prima facie case of discrimination under the ADA or Title VII, Stone Ridge demonstrated a legitimate, non-discriminatory reason for its decision to terminate her. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) (describing burden-shifting framework for Title VII discrimination claims); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (applying McDonnell Douglas framework to ADA claims). Namely, Stone Ridge provided evidence of its investigation into allegations that Niculcea abused a resident on April 23, 2014. Rebecca Schnoke, a Licensed Practical Nurse who aided Niculcea with the resident, alleged that Niculcea removed the resident's shorts and briefs to conduct a skin assessment of her buttocks even though the resident did not consent, and that Niculcea grabbed the top of the resident's arms and attempted to sit her in a wheelchair when she attempted to leave the room. Stone Ridge provided evidence that these actions violated policies pertaining to a resident's right to refuse treatment and justified immediate termination. Niculcea was terminated six days after the incident.

Niculcea argues that Schnoke's account of the April 23 incident was false, that she did not commit resident abuse, and that her termination therefore must have been discriminatory. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). The issue is therefore not whether Schnoke's allegations against Niculcea "were substantiated or valid, or whether [Stone Ridge] was

7

remiss to rely upon" them, but rather whether Stone Ridge believed the allegations "to be accurate and actually relied upon them." Id. at 766-67; see also Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1003 (8th Cir. 2012) ("To prove that the employer's explanation was false, the employee must show the employer did not truly believe that the employee violated company rules."). Niculcea has provided no evidence to suggest that Stone Ridge did not truly believe or rely on Schnoke's account. Accordingly, the District Court properly granted summary judgment in favor of Stone Ridge on this claim.[5]

Niculcea also contends that the District Court improperly dismissed her claim under the Pennsylvania Human Relations Act ("PHRA"). The District Court did not,

---

[5] Niculcea's contention that administrators only believed Schnoke's account of events because of Schnoke's American national origin is not supported by the record. With respect to Niculcea's argument that her termination was discriminatory because another RN Supervisor, Gayle Cooper, was not terminated after she refused to perform the duties of a charge nurse and improperly posted a photo of a resident on Facebook, Niculcea did not provide sufficient evidence to show that these circumstances could give rise to an inference of unlawful discrimination. The record demonstrates that Cooper was not hired to work as a charge nurse, so it is not clear why she should have been disciplined for failing to perform charge nurse duties. And with respect to Cooper's Facebook post, Niculcea did not demonstrate that she and Cooper "engaged in acts of 'comparable seriousness.'" Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006) (citation and emphasis omitted); see also de Lima Silva v. Dep't of Corrs., 917 F.3d 546, 559 (7th Cir. 2019) ("Conduct may be comparably serious if it violates the same rule or is of a similar nature."). Lastly, as for Niculcea's related claim that she was given a higher workload than Cooper because of her national origin, we conclude, for substantially the same reasons provided by the District Court, that this contention is speculative. Cf. Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim.").

however, construe Niculcea's second amended complaint as raising a claim under the

PHRA, as Niculcea repeatedly stated that she brought her action under the ADA, Title

VII, the ADEA, and the GINA.  Even if this conclusion was incorrect, any error was

harmless, as the PHRA is analyzed under the same standards as its federal counterparts,

see Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996), and as noted above, the

District Court properly resolved Niculcea's claims under those statutes in favor of Stone

Ridge.[6]

Accordingly, we will affirm the judgment of the District Court.

---

[6] We have considered the remaining arguments raised in Niculcea's opening brief and conclude that they lack merit.